In the Matter of Arthur A. Brown, an Attorney, Respondent.

First Department, July 6, 1923.

**Attorney and client — disciplinary proceedings — attorney suspended for six months for converting money of clients given to him for purpose of paying expert witness.**

An attorney at law who had been practicing twenty-two years and prior to the present proceedings had a good reputation, suspended for six months for using for his own purposes money which was given to him by clients for the purpose of paying the fees of an expert witness in condemnation proceedings.

The contention of the respondent that his failure to pay the fees was due to a dispute between the expert witness and himself as to the amount of the bill and that the witness would not receive the fees awarded is not sustained by the evidence.

Disciplinary proceedings instituted by the Association of the Bar of the City of New York.

*Einar Chrystie,* for the petitioner.

*MacDonald DeWitt [Harry H. Van Aken* of counsel], for the respondent.

Clarke, P. J.:

The respondent was admitted as an attorney and counselor at law at the July term, 1901, of the Appellate Division, Fourth Department. The petition alleges that the respondent has been guilty of misconduct as an attorney at law as follows: The respondent appeared as attorney for a number of property owners in a condemnation proceeding brought in the New York Supreme Court by the city of New York. The respondent while acting for the said property owners employed one James W. Armstrong, a building contractor, to examine and appraise the improvements on the property condemned and to testify as an expert witness in the said proceeding. Armstrong thereafter examined and appraised the improvements and testified as an expert in the proceeding. In September, 1918, the commissioners appointed by the court in the condemnation proceeding filed their report in which they made award to the property owners for the properties taken by the city of New York and also awarded the following amounts to the property owners for the time and expenses of James W. Armstrong as an expert witness in the proceeding: Parcel 138, $47.80; parcel 139, $42.46; parcel 153, $34.99; parcel 155, $41.12; parcel 158, $47.65; parcel 159, $38.77; parcel 189, $45.78; parcel 200, $29.48; parcel 202, $62.79.

During April and May, 1919, the respondent, acting as attorney

for the property owners, collected from the city of New York the awards made by the commissioners in the aforesaid report, including the amounts allowed for the fees and expenses of James W. Armstrong, as above set forth. No part of the moneys so collected, aggregating $390.84, has been paid over to Armstrong, and the respondent has converted the same to his own use. Respondent has no claim or lien on the moneys converted.

The learned official referee to whom the matter was referred reports as follows: "After these awards had been confirmed the City of New York issued and delivered to the property owners warrants drawn to their order for the amounts awarded to them and also warrants for fees and expenses. The property owners either endorsed these warrants in blank and delivered them to the respondent or gave him a separate check to be used by him for the purpose of paying the witness fees. The respondent deposited the warrants and checks received from his clients in his personal bank account, with Clarke Brothers, of New York City, or in another account which he had in the National Ulster County Bank of Kingston, N. Y. Shortly after making these deposits his drafts on the said accounts reduced the balances to his credit to a sum less than the amounts received by him from his clients for the purpose of paying James W. Armstrong, one of the expert witnesses. The respondent does not deny that he received the money for the purpose of paying the expert witnesses fees, including Armstrong's, but asserts that Armstrong was not paid for the reason that Armstrong claimed a larger sum than that allowed by the Commissioners and declined to give a receipt in full for his services. * * * After careful consideration of all the testimony, I think it must be held that respondent received his client's money and appropriated some of it to his personal use. This follows from the condition of his bank accounts. It appears that shortly after making deposits of money his drafts reduced balances to his credit to a sum less than the amounts received by him for the purpose of paying Armstrong. Notwithstanding the testimony of the respondent as to the fact that his resources were such as to enable him at any time to pay Armstrong, it must be held that a conversion of funds is proven. Our courts have many times held that such use of a client's money constitutes conversion."

We have made a careful examination of the testimony and approve of the conclusion reached by the learned official referee. The property owners gave these moneys to respondent upon the understanding that he was to use them solely for the purpose of paying the expert witnesses for their services. Not only does the examination of the accounts of respondent in the two banks in

which he deposited demonstrate that he used these trust funds for his own purposes, but there is his written acknowledgment to that effect. On May twenty-second respondent received the last of the checks turned over by his clients. About a month later, on June 25, 1919, he wrote a letter to Armstrong in which he said:

"I owe you on your account $110.71 on the following cases:

| | |
|---|---:|
| "R. Brownell | $29.48 |
| "J. C. Mattice | 42.46 |
| "E. Bevins | 38.77 |

which I expected I could pay you the last week, but some expenses which I had positively to meet took from me what funds I had and I depended upon some funds coming in which have not as yet, and which I expect will come any time now, and will send this to you as soon as it does."

To which Armstrong answered:

"Your letter of June 25, received. But was doubly disappointed in not receiving the amount and not getting the full amount in at least the Bevins case, as I understood that there was no question of my full amount from the Bevins case and others that followed. Let me know when I can expect the award as I am under a big expense trying to build another home and carrying on business at the same time."

It should be noted that while respondent asserted that the trouble arose from the fact that Armstrong demanded for his services more than had been allowed by the commissioners, and refused to give a receipt in full unless he received the larger amount, no such claim was set forth in his answer submitted to the Bar Association nor in the answer filed to the petition herein. Armstrong positively denied that he had refused to accept the awards and asserts that no tender was made. The charges were investigated by the committee on grievances in June, 1920. This proceeding was commenced on November 8, 1920, and on the twelfth, four days after service of the petition, the respondent sent checks to his clients for the amounts which had been awarded to Armstrong with letters in which he said that he had been unable to settle with Armstrong. In every instance when the client subsequently sent the amount to Armstrong he gladly accepted it. It should be noted also that when he wrote his letter to Armstrong of June 25, 1919, quoted above, which was a month after he had received all the moneys for the expert witnesses from his clients, and in which he said that he had collected three of the amounts due and confesses that he had used these amounts for his own expenses, he made no reference to the fact that he had collected the moneys from all

8

the clients and had in his possession five amounts received in addition to those itemized in his letter.

It is quite apparent from the whole case that the respondent was in financial straits and made use of the trust funds intrusted to him for a definite purpose to relieve his own necessities. This constitutes conversion. It follows that the finding that respondent had been guilty of misconduct as an attorney and counselor at law was fully justified. It appears from the record that the respondent has been twenty-two years at the bar and that no other charges or complaints have been made against him. We think, under the circumstances disclosed by the record, that a suspension of six months will satisfy the ends of justice, and it is so ordered, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the condition to be incorporated in the order to be entered hereon.

DOWLING, SMITH and MERRELL, JJ., concur.

Respondent suspended for six months. Settle order on notice.